UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

UNITED STATES OF AMERICA              CRIMINAL ACTION NO. 06-50099

versus                                JUDGE STAGG

ASIKA M. NWEKE                        MAGISTRATE JUDGE HORNSBY


**REPORT AND RECOMMENDATION**

**Introduction**

Before the Court is Defendant's **Motion to Suppress (Doc. 16)**.  Defendant is charged in a 12-count indictment with trafficking in counterfeit merchandise.  Defendant's motion argues that the federal agents' warrantless seizure of the counterfeit items violated the Fourth Amendment.  For the reasons that follow, it is recommended that Defendant's Motion to Suppress be **denied**.

**The Facts**

An evidentiary hearing was held on November 13, 2006 and May 1, 2007.  The evidence at the hearing establishes the following facts.  Brad Richie, a merchant doing business in the Pierre Bossier Mall in Bossier City, Louisiana, made a complaint to Agents Lee Robinson and James Podboy of the Immigration and Customs Enforcement ("ICE") office in Shreveport that another merchant in the mall was selling counterfeit jeans.   The agents were familiar with Richie because of previous contact with him in connection with the sale of counterfeit trademark goods at another store in the mall.  Richie told the agents that the counterfeit goods were being sold at an open booth site at the "Mega Liquidation"

trade show located within the mall area previously occupied by Service Merchandise.  Tr. 9-11.

On August 19, 2005, Agents Robinson and Podboy went to the Mega Liquidation trade show to investigate the complaint.  The trade show was open to the public on that day. When the agents entered the Mega Liquidation area, they found numerous booths or locations where merchants were selling items to the general public in a typical trade show fashion. The agents surveyed all of the booths looking for counterfeit clothing, shoes, software or similar items.  Tr. 13.  In general, they found that most of the retailers were selling non-counterfeit, legitimate goods, i.e. overstock items from other retailers.  However, upon entering the booth bearing the name "Classy Fashions," they immediately noticed what they believed to be counterfeit trademark clothing.

Both Robinson and Podboy had received extensive instruction and on-the-job experience in identifying counterfeit trademark goods.  At the Classy Fashions location, the agents noticed that the "hang tags" on some products did not match the type of hang tags that should be on those products.  They also noted that the tags were attached using staples rather than the threads that are customarily used with designer jeans.  Tr. 17.  The agents also noticed that products were manufactured in countries in which the trademark holders do not typically manufacture their products.  Tr. 22.

After examining the products in the booth at Classy Fashions, the agents exited the old Service Merchandise area and reentered the main part of the mall.  The agents made

contact with mall security to let them know that a vendor at the mall was selling counterfeit goods and they requested assistance in seizing those items and providing security during the seizure. They also spoke again with Mr. Richie to confirm that the Classy Fashions booth is where he had previously observed the counterfeit merchandise. Tr. 23. There is also some evidence in the record, although it is disputed by Defendant, that Agent Podboy contacted one or more of the trademark owners by telephone to confirm the counterfeit nature of some of the items. Agent Podboy's cell phone records were discussed extensively during the second day of the suppression hearing (May 1, 2007).

The agents returned to the Classy Fashions booth and made contact with Christina Nweke. Tr. 23-24. Ms. Nweke initially claimed that she could not speak English, but, when she was offered the assistance of a translator, she told the agents that Asika Nweke owned and operated Classy Fashions, but he was not there at the time. Agent Podboy contacted his headquarters for a database check on Asika Nweke. He learned that Asika Nweke had been contacted by ICE agents from the Shreveport office in 2003 and was warned about selling counterfeit goods in Shreveport at that time. Tr. 24. Podboy's office also informed him that Mr. Nweke had been encountered at a similar trade show in Detroit selling counterfeit goods in 1989. The counterfeit merchandise in that case had been seized and Mr. Nweke had been warned. Tr. 24.

Christina Nweke telephoned Asika Nweke, who she identified as her brother. Christina Nweke then gave the phone to Agent Podboy, who spoke with Asika Nweke.

Agent Podboy told Mr. Nweke that items being sold at Classy Fashions were counterfeit and were being seized.  That afternoon, agents seized approximately $56,000 in counterfeit merchandise from Classy Fashions.  Tr. 27.  A few days later, on August 23, 2005, Agent Podboy presented an application and affidavit for a seizure warrant to the undersigned magistrate judge.  However, by the time the seizure warrant was signed, the seizure had already taken place.

**Law and Analysis**

Defendant concedes that he had no reasonable expectation of privacy at his place of business at the time of the seizure because his booth was open to the public for business at that time.  Defendant's Supplemental Memorandum (Doc. 35), p. 6.  See Minnesota v. Carter, 525 U.S. 83, 90 (1998) ("Property used for commercial purposes is treated differently for Fourth Amendment purposes than residential property.  An expectation of privacy in commercial premises, however, is different from, and indeed less than, a similar expectation in an individual's home.").

Defendant contends that the evidence in this case should be suppressed because federal law, specifically 19 U.S.C. § 1595(a), specifically requires agents to obtain a warrant prior to the seizure of the allegedly counterfeit goods.  Defendant also contends that the agents did not have probable cause to make the seizure.  The Government argues that no warrant was required as the counterfeit goods were in plain view at the time of the seizure. The Government further argues that Agent Podboy and Agent Robinson immediately

recognized the items in question as counterfeit and, therefore, the agents had probable cause to make the seizure.

19 U.S.C. § 1595 provides that agents "may" apply for a warrant from a judicial officer when the agents have probable cause to believe that merchandise has been brought into the United States unlawfully or is otherwise subject to forfeiture.  Defendant argues that this authorization *requires* agents to obtain a seizure warrant, even if the contraband is in plain view.  Tr. 67.  In support of his argument, Defendant sites United States v. Mendoza-Ortiz, 262 F.3d 882 (9th Cir. 2001) and Lee v. Rabb, 576 F.Supp. 1267 (S.D. Ohio 1983), but neither case addresses the situation presented here: the seizure of counterfeit items in plain view from a retail location that is open for business at the time of the seizure.  There is no indication in the statute to indicate that Congress intended to nullify the plain view doctrine in situations where the statute says an agent "may" apply for a warrant.

The rationale of the plain view doctrine is that when contraband is left in open view and is observed by a police officer from a lawful vantage point, there has been no invasion of a legitimate expectation of privacy and thus no search within the meaning of the Fourth Amendment.  Minnesota v. Dickerson, 508 U.S. 366, 375 (1993).  Thus, if the police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant.  Id.  See also Horton v. California, 496 U.S. 128, 136 (1990); United States v. Paige, 136 F.3d 1012, 1024 (5th Cir. 1998).

The plain view exception to the warrant requirement is applicable to the facts of this case.   The agents were lawfully in the Classy Fashions booth area (which was open for business)  when they viewed the merchandise, the merchandise's counterfeit nature was immediately apparent, and the agents had a lawful right of access to the clothing. Accordingly, the agents could lawfully seize the counterfeit merchandise without a warrant.

Defendant argues that probable cause did not exist at the time of the seizure.  Instead, Defendant argues that the agents "simply seized the clothing because they **merely suspected** it was counterfeit." (Emphasis in original).  Probable cause is determined by examining the totality of the circumstances.  Illinois v. Gates, 462 U.S. 213, 230-231 (1983).  It is a fluid concept – turning on the assessment of probabilities in a particular factual context – not readily, or even usefully, reduced to a neat set of legal rules.  Id.  It is clear that only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.  Id. at 235.   See also Kohler v. Englade, 470 F. 3d 1104, 1109 (5th Cir. 2006).

The facts in this case, when considered in combination with the agents' training and experience, led the agents to believe that Defendant's merchandise was counterfeit.  As described above, the hang tags on the items did not correspond to the hang tags customarily used on the products.  Also, the hang tags were not attached to the products in the usual manner.  Furthermore, many of the items were manufactured from countries where such items are not typically manufactured.  Thus, the totality of the circumstances gave rise to

probable cause to support the agents' warrantless seizure of the counterfeit goods in plain view.

There is also some indication in the record that Agent Podboy contacted representatives of one or more of the trademark owners to confirm the counterfeit status of some items.  Defendant disputes that Podboy did so, but whether he did does not lessen the probable cause that existed at the time Agents Podboy and Robinson observed the counterfeit merchandise in plain view.

**Conclusion**

Agents Podboy and Robinson had probable cause to believe that the Classy Fashions merchandise in plain view constituted illegal counterfeit merchandise.  Accordingly, a warrant was not required to effect the seizure of the merchandise.  Defendant's Fourth Amendment rights were not violated by the seizure, and there is no basis upon which to suppress the evidence.

Accordingly,

**IT IS RECOMMENDED** that Defendant's **Motion to Suppress Evidence (Doc. 16)** be **denied**.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an

Page 7 of  8

extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another

party's objections within ten (10) days after being served with a copy thereof.  Counsel are

directed to furnish a courtesy copy of any objections or responses to the District Judge at the

time of filing.

A party's failure to file written objections to the proposed findings, conclusions and

recommendation set forth above, within 10 days after being served with a copy, shall bar that

party, except upon grounds of plain error, from attacking on appeal the unobjected-to

proposed factual findings and legal conclusions accepted by the district court.  See Douglass

v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED at Shreveport, Louisiana, this 11th day of July, 2007.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE